Submitted November 24, 2009, affirmed June 30, 2010

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAMIE ANN SHEPHERD,
*Defendant-Appellant.*

Union County Circuit Court
F15447; A139075

236 P3d 738

Peter Gartlan, Chief Defender, and David C. Degner, Deputy Public Defender, Appellate Division, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Cecil A. Reniche-Smith, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

**SCHUMAN, J.**

Defendant pleaded guilty to unauthorized use of a vehicle, attempting to elude a police officer while in a motor vehicle, and driving under the influence of intoxicants. As part of defendant's sentence, the court ordered her to pay $18,145.30 in restitution, ORS 137.106, and $1,200 as a compensatory fine, ORS 137.101. On appeal, defendant argues that the trial court erred in ordering the compensatory fine because such fines are authorized only for objectively verifiable monetary losses and the state did not adduce any evidence that the $1,200 met that criterion. Because that argument differs from the argument that defendant made to the trial court and, as a consequence, the state never had the opportunity to respond to it, we decline to address it on appeal. We therefore affirm.

Defendant, while intoxicated, stole a car belonging to the Donnellys. The Donnellys knew defendant and reported the theft to the police. When an officer saw the stolen car and tried to pull it over, defendant sped away through downtown La Grande, reaching speeds estimated to be near 80 miles per hour, and stopped only when she crashed the car into a tree, injuring herself and totally destroying the vehicle.

After negotiations with the prosecution, defendant pleaded guilty to the above charges; three other charges were dismissed with prejudice. At sentencing, the state sought restitution. The Donnellys' insurance company valued the car at $18,145.30; the Donnellys had a policy with a $1,000 deductible. The state argued that defendant should be ordered to pay the insurer $17,145.30, and the Donnellys $1,000. When Mr. Donnelly spoke during the sentencing hearing, however, it became clear that the Donnellys had incurred expenses beyond the $1,000 deductible. It is not clear, however, whether that additional expense resulted from the fact that the Donnellys' insurer concluded that the value of the stolen car was $1,200 less than the amount that the Donnellys had to spend for a replacement, or from the fact that the Donnellys had made only one payment on the destroyed car and that payment went entirely to interest. Mr. Donnelly stated:

"[T]he insurance and the gap insurance wouldn't pay the full amount [for the new car]. There was still like

$1,200.00 that * * * the dealership wasn't willing to add * * * to the new loan. We had to get our own—a new loan processed and start it. Because we only made one payment on [the stolen] vehicle. We'd only had it for a month.

"* * * * *

"[We spent] around $1,200.00 some dollars that * * * had to be added to the new loan because that was what was left on the loan for the new vehicle after the insurance paid their part."

After this information came to the state's attention, the state asked the court for additional restitution to cover the $1,200. The trial court did not believe that those costs were appropriate for restitution and thought they would be more appropriate as a compensatory fine. The court stated:

"I—the thing is I can't order anything that's not a—that's not a result of—of the damage, you know, as restitution. I can order, I believe you've asked for a comp[ensatory] fine and I might be able to—to raise that to $1,200.00 to cover—cover that because that's part of one of the things in the—being without a vehicle for three weeks, that's a loss and plus—and—and I—I think I can order that. But I don't think I can order it as restitution."

The court did not explain why it believed that restitution was inappropriate or why it believed that a compensatory fine was. The state, however, agreed to characterize the $1,200 as a compensatory fine. Defendant objected, arguing that the statute governing compensatory fines, ORS 137.101(1), limited such fines to the amount that could be recovered in a civil action, and the $1,200 did not meet that criterion. The statute provides, in part:

"Whenever the court imposes a fine as penalty for the commission of a crime resulting in injury for which the person injured by the act constituting the crime has a remedy by civil action, unless the issue of punitive damages has been previously decided on a civil case arising out of the same act and transaction, the court may order that the defendant pay any portion of the fine separately to the clerk of the court as compensatory fines in the case. The clerk shall pay over to the injured victim or victims, as directed in the court's order, moneys paid to the court as compensatory

fines under this subsection. This section shall be liberally construed in favor of victims."

Defendant did not explain why she believed that the Donnellys did not have a "remedy by civil action." The court overruled defendant's objection and, when it later imposed the compensatory fine, explained:

"I'm [going to] order a $1,200.00 comp[ensatory] fine to cover not only the—well, to cover basically their * * * not having a car. I imagine there was other things that were in that vehicle that were either lost or damaged or whatever that were never—never retrieved. * * * An insurance claim rarely, if ever, if ever pays all the damages to somebody. It may—may look good on paper, but it doesn't cover the damages that I believe are covered by the comp[ensatory] fine."

Defendant did not object to that ruling at the time.

On appeal, defendant makes the following argument. A "victim" for purposes of the compensatory fine statute is defined in ORS 137.103(4) as follows:

" 'Victim' means:

"(a)   The person against whom the defendant committed the criminal offense, if the court determines that the person has suffered economic damages as a result of the offense.

"(b)   Any person not described in paragraph (a) of this subsection whom the court determines has suffered economic damages as a result of the defendant's criminal activities.

"* * * * *

"(d)   An insurance carrier, if it has expended moneys on behalf of a victim described in paragraph (a) of this subsection."

"Economic damages," in turn, "[h]as the meaning given that term in ORS 31.710," ORS 137.103(2), which provides, as relevant, that the term "means objectively verifiable monetary losses." According to defendant, "[t]he state presented no evidence of 'objectively verifiable monetary losses.' " Although defendant's brief is not altogether clear on this point, the argument seems to be this: The court ruled that the $1,200

compensatory fine was justified as compensation for loss of use of the car while it was being replaced, or for items that were in the car and were destroyed with it. The only evidence at trial, however, was that the Donnellys lost $1,200 in either prepaid interest or undervaluation by the insurer; there was no testimony or other evidence of the losses upon which the court ultimately based the compensatory fine. Consequently, the state presented no evidence of the "economic damages" underlying the fine and, that being the case, there was no evidence that the Donnellys or the insurer were "victims" for purposes of the compensatory fine statute.

In response, the state first notes that the argument on appeal is not the argument that defendant made below. In the alternative, the state proposes an interpretation of the compensatory fine statute under which the court is authorized to impose such a fine for the benefit of a victim in any amount that is less than the statutory maximum fine for the criminal offense—here, $125,000 for unauthorized use of a vehicle—so long as the victim would have had a remedy against the defendant in a civil action, unless the issue of punitive damages had already been litigated in such a civil action. According to the state, in other words, all that the prosecution had to prove at trial was that (1) defendant committed a crime punishable by fine, (2) that crime caused verifiable economic damages to a victim, (3) the ultimate compensatory fine imposed was less than the fine that the court could have imposed on the defendant for the crime, and (4) the issue of punitive damages had not been litigated in a civil action. In support of its position, the state notes that nothing in ORS 137.101(1) ties the amount of the compensatory fine to the amount of damages that a victim sustains and, in fact, expressly provides whenever a court imposes a punitive fine, it can designate *any portion* of it as compensatory; that ORS 137.101(2) provides that compensatory fines "may be awarded in addition to restitution" and ORS 137.103(3) allows restitution "in addition to a compensatory fine"; and that both ORS 137.101(1) and (3) indicate that, despite being denominated as "compensatory," the fines are a criminal analog to punitive damages.

■ This case, however, does not provide us with the need (or the opportunity) to consider the state's statutory argument. That is so because the state's primary argument is correct: defendant's argument on appeal was never made below and is therefore not preserved. Rules of preservation are meant to ensure that the parties' positions are presented clearly to the trial court and that the parties are not taken by surprise, misled, or denied opportunities to meet an argument. *State v. Olivar*, 216 Or App 126, 135, 171 P3d 1006 (2007), *rev den*, 344 Or 110 (2008). At the trial court, defendant argued that the Donnellys would not have had a civil remedy allowing them to recover for the difference between the value that the insurer determined the destroyed car to be worth, on the one hand, and, on the other hand, what they had to pay to replace it. On appeal, defendant makes an altogether different argument: There was no evidence of an objectively verifiable loss in the amount of $1,200. Had defendant made that argument below, the state may have had the opportunity to put on such evidence.

■ We understand that, under *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997), we are "responsible for identifying the correct interpretation [of a statute], whether or not asserted by the parties." That responsibility arises, however, only when the parties have put the issue of statutory interpretation before us by disagreeing as to what a statute means; in such situations, we are not limited to choosing the better of two erroneous interpretations. Here, the factual and procedural predicates for statutory interpretation simply have not arisen. Defendant loses, not because a correct interpretation of ORS 137.101(1) compels that outcome, but because she has not adequately preserved the argument that would have put the meaning of the statute at issue.

Affirmed.